MANCHESTER AND LAWRENCE RAILROAD *v.* FISK & a.

A plaintiff, by limiting his claim to services performed between certain dates, may make those dates material, so that he cannot claim for services before or after.

It is not necessary to declare for tolls, as such. They may be described by suitable terms to express the services, or the like, for which the tolls are allowed.

Freights upon railroads may be established by the directors, or by their agents, under their authority. The assent of the directors may be presumed, if nothing appears to the contrary.

Where a printed tariff of freights is established, any printed copy may be regarded as an original.

Where copies of such tariff are required by law to be posted at the depots of the railroad, that is a sufficient account of the absence of those copies to render secondary evidence admissible.

In Assumpsit. The first count is *indebitatus assumpsit* to the amount of $1,700,00, for the freighting, carrying and transportation of divers goods, wares and merehandise, logs and other lumber, conveyed and transported by the plaintiffs in divers and several quantities, on sundry days and times between May 1, 1853, and September 1, 1853, over the plaintiffs' railroad, at the defendants' request.

The second count is also *indebitatus assumpsit*, to the amount of $1,750,00, for work done, and materials for the same provided; for money had and received, &c.

The specification embraced charges for the freight of logs over their railroad, from May 12, 1853, to November 10, 1853, inclusive, to the amount of $1,597,00, without interest, of which sums $330,50 was for logs transported in October and November of that year.

The action was tried at the court of common pleas upon the general issue, when it appeared that the plaintiffs, having accepted and organized under their charter, and acting under it at the time of freights charged, transported over their railroad the quantity of logs stated in their specification, and at the times specified, except a few items, amounting in all to $21,90, and being the items under date of June 21, 1853.

To prove the right to recover the prices set forth in the plaintiffs' specification, their station agent, Charles Chase, was offered as a witness by plaintiffs. He produced his book of original entries of freight transported, with the prices carried out, and verified the specification by it. He also testified that the charges were made by him, and at the rates prescribed in the tariff of tolls posted up in his station-house, without producing the tariff, or its loss being shown, but producing a printed paper which he said was like the one so posted.

To the admission of this evidence the defendants excepted, on the ground that the tariff so posted was the proper evidence, and the testimony of the witness incompetent.

But the court admitted the evidence.

To prove that the rates of toll were legally and duly established, the plaintiffs offered as a witness James A. Weston, who testified that he was the master of transportation, and that prior to May 2, 1853, he revised the tariff of tolls then in existence, under the direction of the president, to take effect on said May 2, and signed the tariff so revised, in his name, as agent; that he caused it to be printed and sent to the various stations on the road; but it did not appear that this tariff was established by the directors of the railroad.

The defendants contended that by the charter of the said railroad and the laws of the State, the tariff could only be established by the directors, and that, therefore, this was not duly or legally established. But the court ruled otherwise. The defendants excepted.

To prove the posting of said tariff at the several stations, the said Weston testified that a printed copy was sent by him to each of the several stations on the road, at least thirty days prior to the time the same was to take effect.

He farther testified that another tariff was made by him afterward, under the direction of the superintendent, and to take effect September 1, 1853, which was also printed and sent to the several stations more than thirty days before the same was to take effect. A copy of this tariff was produced at the trial. He remembered giving directions to the station agents to post them up; but whether he did to all of them, in respect to the tariff of May 2d, he could not say. Had no recollection of doing it in any particular instance. He remembered that at one time he wrote on the backs of the copies so sent, directions to post them up thirty days before they were to take effect; but whether in the instance of May 2d he could not say: That he sent to all the station agents at the same time, and that he heard no complaint from any of them, nor from any persons doing busi-

ness with the road, that the tariffs had not been duly received and posted at the several stations.

The said Chase testified that a copy of the tariff of May 2d was posted at Wilson's station, where he was, thirty days before it took effect; that it was like the one produced, and that the one so posted was still at the depot.

The defendants excepted to the competency of the parol evidence of the aforesaid written directions upon the back of the copies, there being no proof of their loss; and, also, that there was no competent evidence of the posting of the tariffs at the several stations; but the court overruled the exceptions and submitted the questions to the jury.

The jury returned a special verdict, to the effect that the tariffs had been posted according to law.

The defendants excepted that the tariff of May 2d, alleged to have been posted, did not purport to have been established by the directors, or to be the tariff of the Manchester and Lawrence Railroad, but a joint tariff of that and other roads, as appeared by the copy produced.

The defendants also excepted that the declaration does not embrace the items of the plaintiffs' specification after September 1, 1853, and that they are not entitled to recover for the same.

But the court overruled the exception; and the court directed a verdict for the plaintiffs for $1,727,89, including all the items in the specification, at the rates charged, except one, amounting to $21,90, under date of June 21, 1853, and also except the interest charged in the specification, interest being reckoned from the date of the writ only. On the foregoing case the defendants moved that the verdict be set aside and for a new trial.

The questions arising on the case were transferred to this court for determination.

*H. A. Bellows,* for the defendants.

The action was brought to recover tolls in substance, and the question is, if the tolls were legally established. The case finds that the tariff was not established by the directors, and we say

it can be done in no other way. By the fourth section of their charter, they were granted a toll " at such rates as may from time to time be agreed upon by the directors." The railroad here was constructed under a charter, and for the public use, and must be regarded as dedicated to the public use, and no toll can be demanded unless authorized by the charter. *Olcott* v. *Banfill*, 4 N. H. 537, and cases cited ; *State* v. *Olcott*, 6 N. H. 74. The right to recover toll depends wholly upon the act of incorporation. 3 Dane Ab. 186, ch. 76, art. 11, sec. 25. In this case the plaintiffs accepted their charter, and organized and acted under it, and so the case finds, and it is clear that the corporation is entitled to no toll but such as is granted by the law ; and it must be taken according to the grant. *Griffin* v. *Ham*, 18 Johns. 397.

The power to fix the toll is delegated to the directors expressly, and can be exercised in no other way. It concerns a public corporation, and is an important public trust ; it having been conferred by a vote, or by law, or in any other way. See Angell on Corp. 256, 7, 267, 293 ; *Tibbetts* v. *Walker*, 4 Mass. 595 ; *Dispatch Line* v. *Bellamy Co.*, 12 N. H. 205, 225, 229 ; *Andover* v. *Grafton*, 7 N. H. 304 ; see *Bank U. S.* v. *Dunn*, 6 Peters 55 ; *Hallowell, &c., Bank* v. *Hamlin*, 14 Mass. 180 ; *Bank* v. *Somes*, 8 Peters 1.

The power of a corporation depends entirely on the laws which create it. *Leathers* v. *Ins. Co.*, 4 Foster 259.

II. The tariff posted did not purport to be the tariff of the Manchester and Lawrence Railroad.

III. The testimony of Chase as to the contents of the paper posted at the station, was not admissible, the loss not being shown, it appearing that it was still at the depot. The posting of the tariff was made necessary by law. Comp. Stat. 354, secs. 62, 63.

This is not the case of a notice put into the hands of the other party, which, from necessity, is allowed to be proved by a copy without notice to produce the original ; otherwise there would be no end. But here the paper is in possession of the party offering to prove its contents and no difficulty in producing it. 3 Cow. Phill. Ev. 1202, note 852.

IV. The first count embraces no items after September 1. The account stated in the specification includes a large number of items after that date. No evidence could be properly admitted under this count as to any of those charges. The second count is for work, labor and materials, while the claim is for tolls granted by law, no part of which is admissible under this count.

*George & Foster*, for the plaintiffs.

I. The plaintiffs, under the first count of their declaration, may recover the price of all the services embraced in their specification. The words " between May 1st, 1853, and September 1st, 1853," are superfluous. Without these words a perfect cause of action is stated, embracing the claim for all services rendered prior to February 1, 1854, and any more particular averment is immaterial and need not be proved, but may be rejected as surplusage. 1 Ch. Pl. 230, 258, 295, 300 ; *Drown* v. *Smith*, 3 N. H. 299.

II. The plaintiffs, under the *second* count, may recover the price of all services rendered by them for the defendants prior to the date of the writ. The count for labor and materials is sufficient, without stating the kind of labor, or materials, or the terms of the contract under which they were furnished. Thus an attorney under such a count may recover his fees and the value of his parchment ; a farrier may recover for professional attendance and medicine. This count is also sufficient, where the demand is for building a house, under a special written agreement and specification. 1 Ch. Pl. 348 ; *Peters* v. *Opie*, 2 Saund. 350, note 2 ; *Osborne* v. *Rogers*, 1 Saund. 269, note 2 ; *Atkinson* v. *Bell*, 8 B. & C. 277.

The specification is made part of the record, and shows clearly for what services the plaintiffs have recovered ; and the defendants may effectually avail themselves of it, as a bar to any future action on account of any of the charges embraced therein.

III. But if the plaintiffs cannot under either count recover for the services rendered after September 1st, 1853, they may remit so much of the damages recovered as relates to those items,

and take judgment for the remainder. *Sanborn* v. *Emerson*, 12 N. H. 57 ; *Lambert* v. *Craig*, 12 Pick. 199.

IV. The paper produced by the witness, Chase, was properly admitted to show the rates prescribed by the tariff of tolls posted up at the station houses. In the case of printed papers, all the impressions are regarded as originals. 1 Greenl. Ev. sec. 90 ; *Rex* v. *Watson*, 2 Stark. 116 ; *Bond* v. *Central Bank*, 2 Kelly 92 ; *Commonwealth* v. *Robinson*, 1 Gray 555. Evidence which carries on its face no indication that better remains behind, is not secondary but primary. 1 Greenl. Ev., sec. 84.

V. It is a legal presumption that the tariff, which was revised by the master of transportation, was " agreed upon" by the directors in accordance with the requirement of the 5th section of the plaintiffs' charter. The legal maxim, " *omnia presumuntur,*" applies as well to corporations as to individuals and public officers. *Bond* v. *Central Bank*, 2 Kelly 92 ; *Hartwell* v. *Root*, 19 Johns. 345 ; *Brown* v. *Connelly*, 5 Blackf. 390 ; *Wheeler* v. *Hall*, 3 N. H. 310 ; *Flint* v. *Clinton Co.*, 12 N. H. 430 ; *Bank* v. *Dandridge*, 12 Wheat. 64 ; *Wray* v. *Doe*, 10 S. & M. 452 ; *Turnpike* v. *Myers*, 6 S. & R. 12 ; Angell & Ames on Corp. 281 ; *Gordon* v. *Norris*, 9 Foster 201.

A record is not essential, either to the validity or proof of the acts and contracts of the directors. A. & A. on Corp. 282.

VI. For the sake of the argument we may concede that the directors neglected their duty in this respect, and it will avail the defendants nothing. So, also, if the tariffs were not posted at all the stations on the line of the road, as required by the act of July 13, 1850, sec. 1, (Comp. Stat., ch. 150, sec. 62.)

1. Because the 5th section of the charter and the 1st section of the act of 1850 are merely directory.

2. Because they do not declare the contracts of the corporation void, upon failure to comply with these directions. A. & A. on Corp. 282 ; *Wray* v. *Doe*, 10 S. & M. before cited ; *Banks* v. *Portieaux*, 3 Rand. 136 ; *Fleckner* v. *Bank*, 8 Wheat. 338 ; *Bond* v. *Central Bank*, 2 Kelly 92 ; *Gordon* v. *Norris*, 9 Foster 201.

VII. The testimony of Weston and of Chase was competent, as tending to show that the tariffs were received and posted at the several stations, according to law. *Oaks* v. *Waller*, 16 Vt. 63 ; *Dana* v. *Kemble*, 19 Pickering 112 ; 1 Greenleaf's Ev., sec. 93.

VIII. Evidence of the written directions upon the backs of the tariffs was also admissible, because the papers could not be produced, being required by law to be posted up at the station houses. 1 Greenl. Ev., sec. 94.

*Bellows*, in reply.

The plaintiff has restricted his claim in time. If he brings in a larger time he introduces a new cause of action.

The claim here is for tolls granted by law. It has nothing to do with labor and service. Tolls for ferriage cannot be claimed as compensation for work and labor, but specifically as tolls. Where works are erected under a charter for the public accommodation, toll cannot be demanded, unless authorized by the legislature. *Olcott* v. *Banfield*, 4 N. H. 537.

By the charter the tolls must be fixed by the directors, which the case finds was not done here. The question was not put to the jury, nor found by them. The court ruled the tariff sufficient, if established by the president, and directed the verdict. We contend it must be done by the directors, at a meeting regularly held, though some things may be done without the act of the whole board. The parties would not be bound, if they had specially agreed to pay particular rates.

There is a conflict between the authorities, as to what is to be deemed directory and what is not. Here the establishment of the tolls is essential. Upon the same principle on which it is claimed that a mere agent may establish these rates, the plaintiff must contend that a collector may assess the taxes. The power is vested in the directors and not in the president. *Despatch Line* v. *Bellany Co.*, and *Bank* v. *Hamlin*, before cited. The question is, if they have any right to tolls unless they fix them according to their charter.

BELL, J.*   It is objected that the first count in the declaration is in terms confined to freights between May 1, 1853, and September 1, 1853, and consequently does not include any of the charges enumerated in the specification between September 1 and November 10.   And this objection seems to us well founded, though dates in general are not material in cases of this kind. 1 Ch. Pl. 258.   Yet the dates may be made descriptive of the claim of the plaintiff, so as to render them material ; and if this is needlessly done, as in this case, still the party should be confined to his allegations, since otherwise the necessary effect of a precise but incorrect statement of a claim is to mislead the plaintiff.   See 2 Ch. Pl. 368.   If necessary, the plaintiff might remit the amount of the charges after September 1, and take judgment for the residue.   But the second count is general, among other things for work done, and materials provided for the same, and without any limitation of time.   To this count it is objected, that the plaintiffs' claim is for tolls granted by law, and not for labor or services, and that the claim must be recovered specifically as tolls, and not as work.   This objection would apply with at least equal force to the first count, where the charge is for freighting, carrying and transportation of divers goods, &c., but it is not made to that count.   In the charter of the railroad, and in the statute of 1852, the charges of the railroad for the conveyance of both freight and passengers are denominated tolls, and in our view with entire propriety.   But it does not follow, as we apprehend, that the same charges may not be described in a declaration by any suitable terms to express the real ground of claim.   The term *toll* is used with reference to charges of various kinds.   They may be claimed for the privilege of passage, as upon a turnpike, or canal, or over a bridge, or for some use or privilege enjoyed upon another's land, as in the case of tolls in markets and harbors, but they may also be for labor, or services, and the use of materials, as in the case of ferries, where the toll is a compensation for the labor of the ferryman, or of

* FOWLER, J., having been of counsel, did not sit.

his servants, or horses in transporting passengers, or for the use of his boats; or in the case of mills, where the toll is a compensation for the use of the mill, and for the labor and care of the miller. In any of these cases it seems to us that tolls may well be claimed by a suitable description of the service for which they are claimed. There is no difference in the nature of the claim for transporting a man across a river by a ferry boat, and transporting him from place to place along the river; nor in the nature of the claim for grinding wheat in one end of a mill, and for sawing logs in the other; except, in one particular, the law, from considerations of public policy, has prescribed and regulated the sum to be paid for ferriage and grinding, and these are tolls, while the others remain the subject of agreement between the parties in interest. But notwithstanding the limitation of the amount of the charge by law, the nature of the claim remains unchanged, and it may be set forth in declaring in any terms suitable to describe its true nature.

On this ground it seems to us that the plaintiffs may well recover their tolls in this case, either upon the first count to the 1st of September, or the whole upon the second count of their declaration.

To entitle the plaintiffs to recover the freights they charge, it is necessary that they should show that rates of freight were established before the services were rendered, and what those rates were, and that they were posted up thirty days before they took effect, in all cases where the rate was advanced.

By section 5 of their charter, (Stat. of 1847, p. 497,) "a toll was granted to the corporation for their benefit, on all passengers and property which may be transported by said corporation, at such rates as may from time to time be agreed upon by the directors," and it is argued that the power thus delegated to the directors is a public trust, to be exercised for the public benefit, and such as cannot be delegated to any other persons. It would be insufficient that the rates should be either established by the corporation, or assented to by them; and the rates so fixed would be invalid. But however this might be upon the provisions of

the charter alone, the statute of 1852, (Comp. Stat. p. 354, sec. 62,) provides that "every railroad corporation shall establish from time to time, and cause to be posted up in their depots, the rates and tariffs of tolls between the several stations on such road, and between such stations and the stations of other roads with which they have a joint business connection for the conveyance of freight and passengers, and the rates thus established for the reception and delivery of passengers and freight shall be the same for all persons, and for the like descriptions of freight between such stations, and no rate of fare or freight shall be at any time advanced, except on thirty days' notice established and posted as aforesaid." By this statute the duty of establishing the rates of toll was imposed upon the corporation, and not, as in the charter, upon the directors in terms. The charter, however, vests in the president and directors the authority to act for the corporation. They "are authorized and empowered, by themselves or their agents, to exercise all the powers (thereby) granted to the corporation, for the purpose of completing their railroad, and for the transportation of persons, goods and merchandize thereon," &c.

The facts, as they appear by the case, in relation to the establishment of the rates of toll or freight, claimed by the plaintiffs to have taken effect on the 2d of May, 1853, are that the tariff of freights previously in force was revised by the master of transportation, who is, as we understand, the agent in charge of this department of their business ; that is, of the transportation of freight, under the direction of the president. There is no direct evidence that this tariff was in any way acted on, or considered by the directors, and it is therefore contended, that however it might be established by other officers of the corporation, it was not duly or legally established. But under the statute of 1852 we discover nothing which necessarily limits this power to the directors personally, and by the charter the powers of the corporation may be exercised by the directors or their agents. There is nothing in the nature of the power in question here which renders it unsuitable to be exercised by agents. On

the contrary, it is one of those matters of detail which must be best understood by the agents, who habitually attend to the business.

We are not sensible of the importance of the suggestion that this power is delegated to the directors as a public trust for the public benefit. The directors are but the agents of the corporation for the transaction of its business, and there seems to us no foundation for the idea that they were designed to be made the guardians of any public interest, except so far as the public interest must be necessarily promoted by the wise management of a great public enterprise, for the particular benefit of its owners.

If this power were deemed vested exclusively in the directors, it may be true, as is contended, that there must be a decision of the board at a meeting duly holden, but this might furnish a reason why such a limitation in the charter should be superseded by the law of 1852. We are, then, of opinion that it is competent for the general agents, who have charge of the business of transportation, to establish rates of freight, though of course subject to the control of the directors, if they choose to act upon the matter; and that, as in other cases, the assent of the directors may be presumed unless there is some evidence of dissent. The rates relied on in this case, then, being shown to have been posted up at their depots, and acted upon during the period of these transactions without question or objection, may well be taken to have been legally established, and the ruling of the court on this point is regarded as correct.

The evidence that the tariff of freights was posted at the depots of the railroad, was circumstantial and not direct, but it was competent to be considered by the jury, and, in the absence of all conflicting proof, sufficient to justify the verdict upon this point.

Objection was made that this evidence was deficient, because the only proof of the character and contents of the papers so posted, is the production of what have been called copies, while the originals are not produced, nor their absence sufficiently accounted for. An objection of this kind is usually fatal, if well

founded, and it must be so here, unless some distinction is shown between this and the ordinary cases to which the rule applies. The proof by a copy implies the existence of an original, which must be better evidence. But we think that cases like this present a marked difference from the ordinary case of proof by a copy. It may well be understood that the tariff established by the corporation by its officers, was the printed tariff, provided for the guidance of numerous agents at different stations of its own road, and of other roads connected with it. Each of the printed copies was an original, and the whole of the nature of duplicates, so that the proof of any one would be competent evidence of the contents of the whole ; there being necessarily, from the nature of the process of printing, strong presumptive evidence that the impressions from the same types must be similar. Upon any other construction railroads would be subjected to great risk and inconvenience, from the difficulty of producing upon a trial the numerous notices they are required to post up. While there are good reasons for adopting this view, we are aware of no wrong or inconvenience which can result from its adoption. Any railroad corporation, which was careful to take all its measures with a distinct reference to facility of proof in case of lawsuits, which it would be folly to expect to escape, would of course so establish their tariff that every copy of it, if possible, should be an original. The cases cited by the plaintiffs' counsel tend strongly in support of this doctrine.

It is suggested, and with much force, that if the present was the ordinary case of a copy, the absence of the original was sufficiently accounted for. It is not necessary that the loss of an original should be shown, to render a copy admissible. It is sufficient if it is shown that it is deposited at a place from which it cannot be removed, for the purpose of being brought into court. The tariffs in question here were by law required to be posted at the depots on the railroad, and could not be properly removed. This seems to us a reasonable ground in any case, where there is, as here, no serious question as to the nature of the paper.

Concord *v.* Pillsbury.

An objection was made to the testimony of the witness, as to his having placed upon the copies of the tariff sent to the depots, a direction in writing to post them up thirty days before they were to take effect, but we think the point thus raised is immaterial, because the witness says he cannot say that he did so in the instance of the tariff in question. There is no attempt to prove such writing made in the case before us, and it was not material what was done or omitted in some other case. Besides, it is evident that as such notices were endorsed on the tariffs themselves, whatever would be a satisfactory reason for not producing the paper, must apply with equal force to the endorsement.

It is said that the tariff was a joint tariff of this and other roads ; but there is no foundation for this objection, since the statute requires that the tariff should contain the rates of toll " between the several stations on such road, and between such stations and the stations of other roads with which they have a joint business connection." The tariff produced seems to us to contain no more than the statute requires.

The objections of the defendants not being sustained, there must be

*Judgment on the verdict.*